IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

RICKY Y. TORRENCE                                                                              PLAINTIFF

VS.                                         CASE NO. 12-CV-1122

CMC STEEL FABRICATORS, INC.
d/b/a CMC STEEL ARKANSAS                                                                DEFENDANT

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed by Defendant CMC Steel Fabricators, Inc. ECF No. 15. Plaintiff has filed a response. ECF No. 19. Defendant has filed a reply. ECF No. 20. Plaintiff has filed a sur-reply. ECF No. 21. This matter is ripe for the Court's consideration.

### BACKGROUND

Plaintiff did not file a statement of material facts as to which he contends a genuine dispute exists to be tried. Further, the Court has reviewed Plaintiff's response and his sur-reply to the summary judgment motion and has not found any reference to a disputed fact. Thus, Defendant's Statement of Undisputed Material Facts shall be deemed admitted. *See* Local Rule 56.1(b)-(c).

This is a *pro se* employment discrimination action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, which stems from Plaintiff Ricky Torrence's employment with Defendant CMC Steel Fabricators, Inc. in Magnolia, Arkansas, for more than twenty-four years. Throughout his career, Plaintiff received several promotions to higher-level positions, some of which involved supervising other employees. Plaintiff received his promotions based on

Defendant's job advancement policy for promoting employees based on their "proven ability, efficiency, flexibility and willingness to accept and successfully carry out the responsibilities." *See* CMC Employee Handbook, ECF No. 15-4. Although "length of service is appreciated" by Defendant, "it is not the most important factor in job advancement." *See* CMC Employee Handbook, ECF No. 15-4. At the time of Plaintiff's resignation, he held the positions of Shipping Supervisor for production services, ISO Coordinator for production services, and Kronos Administrator for CMC employees in Magnolia, Utah, South Carolina, and San Marcos, Texas. All of these positions involved supervisory tasks.

Plaintiff's supervisors noted that he was a hard worker and a valued employee but commented that Plaintiff was best suited for administrative activities and staff positions. They believed Plaintiff did not possess a strong skill set for a leadership position or the personality traits of an effective supervisor. His supervisors opined that Plaintiff was passive and his subordinates tended to walk over him. Plaintiff's performance reviews, while generally positive,[1] also reflected these passive traits of his work performance which made him less suitable for leadership positions. One comment was that Plaintiff did not "seem to assume the leadership role necessary for effective supervision."

On February 27, 2012, while still employed by Defendant, Plaintiff filed a charge of discrimination with the EEOC alleging that he was denied a promotion because of his race. In his EEOC charge, Plaintiff did not provide any explanation of the facts surrounding CMC's alleged discriminatory acts. Plaintiff resigned from his job with Defendant on July 16, 2012. Plaintiff filed this lawsuit alleging race discrimination and constructive discharge by Defendant. His complaint states that he "resigned from [his] job because [he] was passed over for

---

[1] A 1995 performance review indicated that Plaintiff was "one of the friendliest, most moral individuals," "capable of several jobs within the department," and "strong in administrative activities and staff type positions."

2

promotions" based on his race.  ECF No. 1.  The complaint further states another man, Nick Paladino, who had "less experience and time with [Defendant], was promoted to a "material manager position" that Plaintiff "had inquired about.  ECF No. 1.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established.  The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir.1995).  The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986).  A fact is material only when its resolution affects the outcome of the case.  *Anderson*, 477 U.S. at 248.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id*.

3

The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

## DISCUSSION

Defendant asserts that it is entitled to summary judgment on both Plaintiff's race discrimination claim and his constructive discharge claim.

*A. Race Discrimination*

Plaintiff has not presented any direct evidence of race discrimination, so the Court will analyze his claims under the *McDonnell Douglas* burden-shifting framework. *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012). Under this familiar framework, a plaintiff must first establish a prima facie case of discrimination. *Id*. To establish a prima facie case of race discrimination, a plaintiff must show that: "(1) he is a member of a protected class; (2) he was qualified for the position (sometimes articulated as meeting the employer's legitimate expectations); (3) he suffered an adverse employment action;" and (4) "the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." *Gibson*, 670 F.3d at 853 (citing *Lake v. Yellow Transp., Inc.,* 596 F.3d 871, 874 (8th Cir. 2010)); *Anderson v. Durham D&M, LLC.*, 606 F.3d 513, 520 (8th Cir. 2010). If the plaintiff successfully establishes a prima facie case, the defendant may rebut the prima facie case by articulating a non-discriminatory reason for its action. *Gibson*, 670 F.3d at 853. The burden then shifts to the plaintiff to show that the defendant's proffered reason was merely pretext for discrimination. *Id*.

There is no dispute that Plaintiff, an African-American, is a member of a protected class and that he suffered an adverse employment action because he was not promoted. Plaintiff, however, has failed to show that he was qualified for the management position for which Mr. Paladino, a white male, was hired. This position was Manager of Relay Sales in Defendant's rail department. Plaintiff stated that he was qualified for the rail position because of the amount of time that he had worked for Defendant and because he obtained an undergraduate degree in finance. Plaintiff, however, admitted that he did not know how a degree in finance would qualify or assist him in the rail position. Mr. Paladino, on the other hand, has a Master's Degree in Operations Management, which is a subject area directly related to the rail position. Further, Defendant has stated that Mr. Paladino's experience in the United States Air Force and personality provide him with strong leadership skills which are necessary for the rail position. Plaintiff has simply not shown how his skill level qualified him for the rail position.

Plaintiff has also failed to show that similarly situated employees were treated more favorably. Plaintiff admits that Mr. Paladino does not have similar qualifications as Plaintiff. Further, Plaintiff has admitted that he does not have any evidence that anyone received promotions based on their race and has acknowledged that he does not believe that anyone intentionally discriminated against him because of his race. When asked if Plaintiff believed that Mr. Paladino obtained the rail position because he is white, Plaintiff responded that he did not know. Plaintiff has offered no evidence to support an argument that Defendant failed to promote him under circumstances that give rise to an inference of discrimination. Plaintiff, therefore, has failed to establish a prima facie case of discrimination.

Even if Plaintiff was successful in establishing a prima facie case, his race discrimination claim would still fail. Once a plaintiff establishes a prima facie case, Defendant must put forth a

legitimate, non-discriminatory reason for not promoting a plaintiff. In this case, Defendant asserts that Mr. Paladino was hired for the rail position based on his skill level and the fact that his personality and leadership skills were better suited for the position than Plaintiff's. Further, Mr. Paladino held a Master's Degree in Operations Management, a field directly related to the rail position. Plaintiff has offered no evidence to show that Defendant's reasons for not promoting Plaintiff to the rail position were mere pretext for racial discrimination. Thus, Plaintiff's Title VII race discrimination claim must fail.

### B. Constructive Discharge

Plaintiff claims that he was constructively discharged because he was "passed over for promotions" and did not feel like he could "continue to work for [Defendant] because [it] had no respect for [him] as an employee or as a person." "To prove a constructive discharge [under Title VII], an employee must show that the employer deliberately created intolerable working conditions with the intention of forcing [him] to quit." *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 418 (8th Cir. 2010). Also, an employee must give his employer a reasonable opportunity to resolve the problem before quitting. *Sanders v. Lee Cnty. School Dist. No. 1*, 669 F.3d 888, 893 (2012). Evidence of the employer's intent can be proven by evidence that the employer could have reasonably foreseen that the employee would quit as a result of its discriminatory actions. *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (1996) (denial of promotion, combined with dissatisfaction with work assignment, were insufficient to uphold constructive discharge judgment).

Here, Plaintiff has offered no evidence that Defendant deliberately rendered his working conditions intolerable and that this was the reason he resigned. In fact, Plaintiff has admitted that no one at his work forced him to resign, he had no problems with any of his supervisors, and that

6

he enjoyed working for Defendant up until the day he resigned. The fact that Plaintiff was passed over for a promotion is simply not enough to establish an intolerable work environment. Moreover, Plaintiff did not provide Defendant with an adequate opportunity to remedy any alleged intolerable working conditions. Plaintiff stated that, prior to filing his EEOC charge, he never talked to anyone at his work about not being promoted. He indicated that his filing of the EEOC charge was the first instance anyone at work knew that he felt as if he was being discriminated against, and he resigned shortly thereafter. Thus, it seems that Plaintiff resigned before he gave Defendant a chance to resolve the situation. For these reasons, Plaintiff's claim for constructive discharge must fail.

## CONCLUSION

For the reasons stated above, the Court finds that summary judgment in favor of Defendant is appropriate as to Plaintiff's race discrimination and constructive discharge claims. Accordingly, the Motion for Summary Judgment (ECF No. 15) should be and hereby is **GRANTED**. Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**. A Judgment of even date consistent with this Opinion shall issue.

IT IS SO ORDERED, on this 4th day of March, 2014.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge